UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN MARSHALL,<br><br>      Plaintiff,<br><br>   -against-<br><br>LYNN J. LILLEY, SUPERINTENDENT FOR WOODBOURNE CORRECTIONAL FACILITY; PETER CHIAVARO, DEPUTY SUPERINTENDENT FOR ADMINISTRATIVE SERVICES; DR. MERVANT MAKRAM, M.D.; A. HARRIS-BAKER, PHYSICIAN ASSISTANT; J. BARRETT-BAKER, NURSE ADMINISTRATOR; EDWARD CORLEY, OFFENDER REHABILITATION COORDINATOR; MARY ASHONG, NURSE PRACTITIONER; DR. CARL J. KOENIGSMANN, M.D.; ANN MARIE MCGRATH; PATRICK GRIFFIN; DR. ALBERT PAOLANO, M.D.,<br><br>      Defendants. | 19-CV-11829 (CM)<br><br>ORDER TO AMEND |

COLLEEN McMAHON, Chief United States District Judge:

  Plaintiff, currently incarcerated at Eastern Correctional Facility in the custody of the New York State Department of Correction and Community Supervision (DOCCS), brings this *pro se* action under 42 U.S.C. § 1983. Plaintiff alleges that a private doctor recommended certain injections for Plaintiff's thigh pain, but doctors at three correctional facilities (Great Meadow, Green Haven, and Woodbourne) treated him without following that recommendation, in violation of Plaintiff's Eighth Amendment rights. Plaintiff also challenges a policy of the Chief Medical Examiner for DOCCS that gives the doctors discretion to disregard the recommendations of outside experts. Finally, Plaintiff alleges that Defendants transferred him from a medium security facility to a maximum security facility in retaliation for his having grieved his medical issues.

By order dated December 30, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

The following allegations are from Plaintiff Steven Marshall's complaint. Plaintiff fell in 2006, while he was a prisoner at Sullivan Correctional Facility and since his fall has had chronic hip and thigh pain. (ECF 2, at 4.) While in DOCCS custody, Plaintiff has had more than 50 physical therapy sessions, and has been prescribed nonsteroidal anti-inflammatory drugs, muscle relaxants, medication for nerve pain, and steroidal epidural injections. (*Id.* at 5.) In 2010 and 2014, Plaintiff had electromyography (EMG) and nerve conduction tests.

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

*Great Meadow Correctional Facility*

In March 2015, while Plaintiff was incarcerated at Great Meadow Correctional Facility in Washington County, New York, Dr. George Forrest, who is not a DOCCS employee, conducted an EMG test on Plaintiff. Dr. Forrest concluded that "[t]his was a normal study without evidence of radiculopathy or poly-neuropathy" and recommended nerve pain medication (Neurontin or Cymbalta) for Plaintiff's tingling, numbness, and burning in the hip or thigh. (*Id.* at 7-8.) Dr. Forrest also proposed ultrasound guided injections if the nerve pain medication was ineffective.

Two months later, in May 2015, Plaintiff had an appointment with Dr. Paolano at Great Meadow regarding a different medical issue.[2] Plaintiff advised Dr. Paolano that he "decline[d] to undergo any surgical procedure on plaintiff's left wrist bone cyst." (*Id.* at 8-9.) Dr. Paolano "became extremely upset and belligerent . . . , accusing Plaintiff of . . . wasting Dr. Paolano's time and the State's money in seeking a medical diagnosis with regard[ ] to [his] left wrist bone cysts and then declining to undergo the unwarranted surgical procedure." (*Id.* at 9.)

Plaintiff then asked Dr. Paolano about treatment for his hip and thigh pain, including the injections that Dr. Forrest had recommended as a "final possible treatment option." (*Id.*) Dr. Paolano told Plaintiff that this "was nothing but a recommendation." (*Id.*) Plaintiff also attempted to ask Dr. Paolano about chronic issues with Plaintiff's right knee, but Dr. Paolano told Plaintiff that "he could only bring up one medical problem at a time" and left the examination room. Plaintiff grieved this incident, but Superintendent Miller denied the grievance on June 22, 2015.

---

[2] The Court assumes for purposes of this order that Plaintiff's claims arising in 2015 are not time-barred. *See Gonzalez v. Hasty*, 651 F.3d 318 (2d Cir. 2011) (holding that equitable tolling of the statute of limitations begins when a plaintiff first raises his administrative claim and ends when prison administrative remedies are deemed exhausted); *Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019) ("[E]very circuit that has . . . reached this question has applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period").

Plaintiff asserts that Chief Medical Officer Carl Koenigsmann, M.D., is responsible for a DOCCS policy that allowed Dr. Paolano and other facility doctors to exercise their discretion to disregard outside practitioner recommendations.

*Green Haven Correctional Facility*

In August 2015, Plaintiff transferred to Green Haven Correctional Facility (Green Haven), in Dutchess County, New York, and nursing staff conducted a medical intake. Five days later, on August 12, 2015, Plaintiff made a sick-call appointment because he had not received Gabapentin, his prescription medication for his thigh and hip pain. (*Id.* at 13-14.)

On August 17, 2015, Plaintiff told Nurse Practitioner Ashong at Green Haven that an outside practitioner had recommended prescribing Neurontin or Cymbalta and, if these were unsuccessful, ultrasound guided injections. Ashong responded that Neurontin was not prescribed to prisoners, but she could prescribe Cymbalta. (*Id.* at 15.) He also asked her for "the exact medical definition" of "meralgia paresthetica," which was Dr. Forrest's diagnosis for Plaintiff's condition, and Nurse Ashong said that she would look into this and let him know at his follow-up appointment.

A few months later, in November 2015, Plaintiff had severe leg pain and numbness and could not get out of bed. A primary care physician directed a nurse to inject Plaintiff with Tramadol and Naproxen, and Plaintiff was able to return to his housing block after the injection.

Thereafter, Plaintiff repeatedly told Nurse Ashong that Cymbalta was completely ineffective. (*Id.* at 16.) She reviewed Doctor Forrest's March 2016 report and told Plaintiff that according to the report, the EMG of his thigh and hip was "normal." (*Id.* at 17.) Plaintiff pointed out that Dr. Forrest had also recommended injections as a "final possible treatment option."

Nurse Ashong became upset and refused to increase the prescription for Cymbalta "in deliberate indifference to plaintiff's ongoing serious medical needs." (*Id.*)

Plaintiff grieved Ashong's failure to increase his pain medication and to define "meralgia paresthetica." The Central Office Review Committee (CORC) resolved the grievance in August 2017, nearly two years after it was filed. (*Id.* at 32.)[3]

*Woodbourne Correctional Facility*

In 2017, Plaintiff's security classification level dropped from maximum to medium, and he was transferred to Woodbourne Correctional Facility in Sullivan County, New York. During medical intake at Woodbourne on March 17, 2017, Plaintiff reported his thigh pain and difficulty walking up stairs. He asked for a "medical flats permit" that would have allowed him to avoid climbing stairs, and requested supportive "sleeves" for his right knee and left wrist. (*Id.* at 20.) Plaintiff was housed in the sensorial disabilities unit and was told that Physician's Assistant Harris-Baker would determine the appropriate course of treatment based on his health records. (*Id.* at 21.)

Five days later, on March 22, 2017, Plaintiff still had not had an appointment with Harris-Baker, and he filed a grievance about being required to go up and down stairs. On April 6, 2017, Plaintiff was granted a permit to wear his left wrist sleeve medical support but not the sleeve for his right knee.

---

[3] In denying Plaintiff's grievance against Ashong, the CORC stated that the medical definition for "meralgia paresthetica" is "thigh burning," that Plaintiff had refused a podiatry follow-up appointment, and that he had not complained of thigh pain for months in 2017, even after Cymbalta was discontinued. (*Id.* at 38.)

Plaintiff raised his concerns with Woodbourne Superintendent Lilley on April 9, 2017, when he was making the rounds. Superintendent Lilley directed Plaintiff to put his concerns in writing and send it to him, which Plaintiff did the next day.

On April 11, 2017, Assistant Deputy Commissioner Patrick Griffin told Plaintiff: "You just got here, and you are already writing to Superintendent Lilley causing problems?" (*Id.* at 25.) Plaintiff replied that he did so at Lilley's direction, and Griffin then threatened to transfer Plaintiff back to a facility where Plaintiff had been assaulted.

The next day, Plaintiff received Superintendent Lilley's response, stating that "there was no medical indication for flats," that Plaintiff had been issued permits for knee and wrist support, and that he had "refused physical therapy." (*Id.* at 27.) Plaintiff disputes that he received a permit for his knee support or that he ever refused physical therapy.

The following week, Plaintiff was called down to meet personally with Superintendent Lilley, who told Plaintiff that Dr. Makram, Physician's Assistant Harris-Baker, and Nurse Administrator Barrett-Wilson were all "well aware of [Plaintiff's] ongoing serious medical needs." (*Id.* at 28.) Plaintiff told Superintendent Lilley that it was not true that he had received the knee support. Superintendent Lilley "remind[ed]" Plaintiff of Griffin's threat to transfer Plaintiff if he continued to "contest the deprivation of access directly to adequate medical care and treatment." (*Id.* at 29.)

Shortly thereafter, on April 27, 2017, Plaintiff filed a new sick-call request and was told that Harris-Baker would determine Plaintiff's treatment based on review of his chart. (*Id.* at 30.) Peter Chiavara, Deputy Superintendent for Administrative Services, responded to Plaintiff's April 10, 2017 complaint, writing that "[a]fter investigation, there seems to be a lack of medical necessity" for the knee brace. (*Id.* at 31.)

On Mary 8, 2017, Plaintiff was issued a Tier III misbehavior report for, among other things, "refusing a direct order." (*Id.* at 33.) Plaintiff was confined to the Special Housing Unit (SHU), and on May 12, 2017, Defendant Chiavara presided over Plaintiff's hearing. (*Id.*)

On the day of the hearing, DOCCS Office of Special Investigation (OSI) sex crimes unit interviewed Plaintiff regarding "employee malfeasance" at Woodbourne. Superintendent Lilley made clear when he saw Plaintiff that he was displeased that Plaintiff was "causing problems for Lilley['s] administration." (*Id.* at 34.)

Defendant Chiavara resumed Plaintiff's Tier III hearing on May 16, 2017, finding Plaintiff guilty of the rule violation and imposing a penalty of 45 days in the SHU. (*Id.*)

The day that Plaintiff was found guilty at the Tier III hearing, Senior Offender Rehabilitation Coordinator (SORC) Corley submitted an unscheduled Transfer Order request to have Plaintiff transferred from Woodbourne for "unsuitable behavior." (*Id.* at 34.) Plaintiff asserts that this transfer was in retaliation for "plaintiff's submission of an inmate grievance complaint contesting the deprivation of access to adequate medical care" and for his "cooperation with the [OSI] investigation." (*Id.*) DOCCS denied the request on May 18, 2017, but the request was "replaced by a new referral." (*Id.* at 35.) Defendant Corley conspired with others (Superintendent Lilley, Dr. Makram, Harris-Baker, and Barrett-Wilson, and Hearing Officer Chiavara) on May 18, 2017, to change Plaintiff's classification level from medium to "Maximum-B." Plaintiff was then transferred to Eastern Correctional Facility, a maximum security facility. (*Id.* at 36.)

On May 23, 2017, Plaintiff grieved the transfer to Eastern, asserting that it was retaliatory. (*Id.*) The Superintendent at Eastern determined that the transfer was appropriate because Plaintiff's security classification had changed and DOCCS had discretion to transfer him

under those circumstances. DOCCS Associate Commissioner McGrath also disputed that the transfer was retaliatory, "falsely" stating that Plaintiff's security reclassification resulted from his Tier III disciplinary misbehavior report. McGrath refused to exercise his discretion to transfer Plaintiff to a medium security facility. On June 12, 2017, Plaintiff appealed the denial of his grievance regarding transfer to the CORC, and on August 8, 2018, the CORC denied the appeal.

## DISCUSSION

### A.    Deliberate Indifference to Serious Medical Needs

For a convicted prisoner to state a § 1983 claim for inadequate medical care under the Eighth Amendment, he must allege facts showing that correction officials were deliberately indifferent to his serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference is evaluated under a two-pronged test comprised of both objective and subjective components. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The objective component of this standard requires that the alleged medical need be a "sufficiently serious" condition, that is, "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "Disagreements over medications . . . forms of treatment, or the need for

specialists or the timing of their intervention, are not adequate grounds for a Section 1983

claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y.

2001); *see also Adams v. Smith*, No. 15-CV-913 (BKS), 2018 WL 1363495, at *4 (N.D.N.Y.

Mar. 16, 2018) ("Courts have repeatedly rejected medical indifference claims based upon a

failure to provide stronger pain medication."). As long as the medical care is adequate, the failure

to provide a particular treatment is not an Eighth Amendment violation. *Sonds*, 151 F. Supp. 2d

at 312.

    1.    Dr. Paolano

Plaintiff alleges that Dr. Paolano at Great Meadow Correctional Facility was angry with

Plaintiff for seeking treatment for his left wrist bone cyst and then declining the treatment that

was offered. This allegation does not state a claim that Dr. Paolano denied Plaintiff adequate

medical care. Allegations that Dr. Paolano told Plaintiff that he had to make a separate medical

appointment to discuss his hip pain, and could not raise other medical concerns at the

appointment regarding wrist bone surgery, are also not grounds for a § 1983 action.

Plaintiff further alleges that Dr. Paolano did not follow the recommendation of an outside

specialist (Dr. Forrest) to provide injections for Plaintiff's hip pain "as a final treatment option."

Dr. Paolano's treatment decisions, so long as they are based on medical judgment, are not

unconstitutional simply because another doctor proposed a different treatment. Moreover,

Plaintiff indicates that Dr. Paolano prescribed him Neurontin, a treatment that Dr. Forrest also

proposed. These facts merely suggest disagreement over medication or treatment and do not state

a claim that Dr. Paolano was deliberately indifferent to Plaintiff's serious medical needs.

    2.    Chief Medical Examiner Carl Koenigsmann

Plaintiff alleges that Chief Medical Examiner Carl Koenigsmann, M.D. was responsible

for a DOCCS policy that allowed Dr. Paolano to disregard outside practitioner recommendations.

As set forth above, a prisoner does not have a constitutional right to choose his medical treatment, as long as he receives adequate treatment. *Hill*, 657 F.3d at 123. Plaintiff's allegations that under DOCCS policy, facility medical providers had discretion to make their own medical judgments does not state a claim that Defendant Koenigsmann or DOCCS caused a violation of Plaintiff's constitutional rights.

       3.      Nurse Practitioner Ashong

Plaintiff alleges that Defendant Ashong refused to increase his prescription for Cymbalta, despite his complaints that it was "ineffective." (ECF 2, at 17.) Once again, "[d]isagreements over medications [or] forms of treatment. . . . are not adequate grounds for a Section 1983 claim." *Sonds*, 151 F. Supp. 2d at 312; *Adams*, 2018 WL 1363495, at *4 (noting that "[c]ourts have repeatedly rejected medical indifference claims based upon a failure to provide stronger pain medication").

Plaintiff also repeatedly alleges that Defendant Ashong failed to "provide the plaintiff with the simple medical definition for meralgia paresthetica." (ECF 2, at 17.) Plaintiff grieved Defendant Ashong's failure to do so and was advised that "meralgia paresthetica" means "thigh burning." (*Id.* at 32.) Plaintiff also researched the medical definition on his own and found that it was "a condition characterized by pain . . . and numbness of the lateral surface of the thigh." (*Id.*) Defendant Ashong's alleged failure to timely provide Plaintiff a satisfactory definition of the condition does not demonstrate deliberate indifference to his serious medical needs, particularly where Defendant Ashong provided Plaintiff with medication for the condition.

       4.      Defendants Makram, Harris-Baker and Barrett-Wilson

At Woodbourne in Sullivan County, Dr. Makram, Physician's Assistant Harris-Baker, and Nurse Administrator Barrett-Wilson denied Plaintiff a right knee sleeve and "medical flats permit" that would allow him to avoid climbing stairs. Plaintiff alleges that Superintendent Lilley

responded to Plaintiff's grievance by stating that "per out[side] provider there was no medical indication for flats." (ECF 2 at 27.)

Any claim against these defendants for injunctive relief is moot because Plaintiff has been transferred to a higher security facility and is no longer at Woodbourne. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.") And the Eleventh Amendment bars any official-capacity claim for damages under § 1983 against these defendants, who are all DOCCS employees and thus state agents. *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . .").

To state a claim against these individuals in a personal capacity, Plaintiff must allege that they were personally involved in violating his rights. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013). Plaintiff does not plead facts about his medical need for a "flats permit" or "knee brace," though it may be related to his hip and thigh pain.[4] Even if the Court assumes for purposes of this order that Plaintiff meets the objective component of a deliberate indifference claim, Plaintiff does not allege that Defendants Makram, Harris-Baker or Barrett-Wilson acted or failed "to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.

Instead, Plaintiff alleges that these defendants informed Superintendent Lilley that Plaintiff's back issues were "minimal" and that there was "no medical indication for flats." (*Id.* at 27.) Absent some facts suggesting that Defendants Makram, Harris-Baker, or Barrett-Wilson

---

[4] According to the complaint, even the outside medical expert on whom Plaintiff relies wrote in his report that the study was "normal," with no evidence of pinched nerves or nerve damage. (*Id.* at 7.)

were actually aware that there was a serious medical need for a "flats permit" or "knee brace" and disregarded the risk of serious harm (for example, by misrepresenting the gravity of his medical issue), Plaintiff cannot satisfy the mental element for a deliberate indifference claim against Defendants Makram, Harris-Baker, or Barrett-Wilson.

5.     Superintendent Lilley

Plaintiff alleges that he made Superintendent Lilley aware of his complaints, and Superintendent Lilley scheduled an in-person meeting with Plaintiff after receiving his letter. Superintendent Lilley had Plaintiff's complaints investigated and ultimately denied the requests based on information from medical providers (that Plaintiff's back issues were "minimal" and that there was "no medical indication for flats." (*Id.* at 27.)). Such allegations do not state a claim that Superintendent Lilley had the required mental state for a claim of deliberate indifference to Plaintiff's serious medical needs, and Plaintiff thus fails to state such a claim under § 1983 against Superintendent Lilley.

**B.     Retaliation for Grievances**

To prevail on a First Amendment retaliation claim, a prisoner must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). Although "a prisoner has no constitutional right to a prison grievance procedure or to have his grievances investigated." *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012), prisoners do have a constitutionally protected interest in not being subjected to retaliation for the filing of lawsuits or prison grievances. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Gill v. Pidlypchak*, 389 F. 3d 379, 384 (2d Cir. 2004) (use of the prison grievance system constitutes protected activity).

Plaintiff alleges that he pleaded guilty to all of the disciplinary charges against him for rule violations, and on May 16, 2017, Hearing Officer Chiavara found Plaintiff guilty and imposed a penalty of 45 days in the SHU. (ECF 2, at 33.) Senior Offender Rehabilitation Coordinator Corley then allegedly conspired with others (Superintendent Lilley, Dr. Makram, Harris-Baker, and Barrett-Wilson, and Hearing Officer Chiavara) to transfer Plaintiff to another facility, allegedly in retaliation for "plaintiff's submission of an inmate grievance complaint contesting the deprivation of access to adequate medical care" and for his "cooperation with the [OSI] investigation." (ECF 2, at 36.)

The same day that Plaintiff was found guilty, Defendant Corley requested that Plaintiff be transferred; Defendant Corley indicated in the transfer request that the reason for the transfer was Plaintiff's "unsuitable behavior." (*Id.* at 35.) Two days later, the transfer request "was denied by the Office of Classification and Movement as being (replaced by a new referral request) also submitted by the [D]efendant Corley at the directio[n] of the defendant Lilley in [f]urtherance of the conspiracy" against Plaintiff. (*Id.*) At the time of the initial transfer request, Plaintiff was still classified as medium security but on May 18, 2017, Defendant Corley changed Plaintiff's classification level to maximum – B. Plaintiff was then transferred from Woodbourne SHU to the SHU of Eastern Correctional Facility – a facility that houses maximum security offenders.

The Superintendent at Eastern determined that the transfer was appropriate because Plaintiff's security classification had changed and DOCCS had discretion to transfer him under those circumstances. DOCCS Associate Commissioner McGrath also disputed that the transfer was retaliatory, "falsely" stating that Plaintiff's security reclassification resulted from his Tier III disciplinary misbehavior report. McGrath refused to exercise his discretion to transfer Plaintiff to a medium-security facility.

To satisfy the causal connection prong of a retaliation claim, a plaintiff must allege that "the conduct was a substantial or motivating factor for the adverse actions." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The plaintiff's allegations must be "sufficient to support the inference that the [protected activity] played a substantial part in the adverse action." *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003). Plaintiff's allegation that he was transferred to a maximum-security facility after his security classification was increased suggests that he would have been transferred regardless of a retaliatory motive. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (holding that plaintiff could not prevail on retaliation claim if "even absent the retaliatory motivation, the plaintiff would have received the same punishment."). Plaintiff's allegations that he was transferred to a maximum-security facility after his security classification increased is thus insufficient to support the inference that his medical grievances played a substantial part in his transfer, and he fails to state a claim under § 1983 for a violation of his rights under the First Amendment.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile to do so. *See Hill*, 657 F.3d at 123–24; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear if the defects in Plaintiff's complaint can be cured with an amendment, the Court grants Plaintiff leave to amend his complaint.[5]

## LEAVE TO AMEND

Plaintiff is granted leave to amend his complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each

---

[5] It is unclear if Plaintiff is suggesting, for example, that his security classification would not automatically or ordinarily have increased when he pleaded guilty to the charges against him at a Tier III disciplinary proceeding.

claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-11829 (CM). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff

fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   February 21, 2020
          New York, New York

COLLEEN McMAHON
Chief United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

**AMENDED**
# COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial                    Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                         Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                  Last Name                      Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 2:

First Name                  Last Name                      Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 3:

First Name                  Last Name                      Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 4:

First Name                  Last Name                      Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____

## VI.     RELIEF

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____
_____
_____
_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

First Name                    Middle Initial            Last Name

Prison Address

County, City                                State                    Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: _____